Filed 12/22/23  P. v. Venegas CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GUILLERMO VENEGAS,<br><br>    Defendant and Appellant. | A166131<br><br>(San Francisco County Super. Ct. Nos. SCN17455101, CT01844694) |

In 2001, a jury convicted defendant Guillermo Venegas of first degree murder with a financial-gain special circumstance.[1]  The trial court sentenced him to life imprisonment without the possibility of parole (LWOP).  In 2022, San Francisco's District Attorney filed a request to resentence Venegas under Penal Code[2] former section 1170.03 (now section 1172.1).[3]  The trial court declined to permit the district attorney's successor to withdraw the resentencing request, but the court denied the request on the merits, finding Venegas would pose an unreasonable risk of danger to public safety if released.  Venegas appeals.  We affirm the court's order.

---

[1] Venegas also went by the name Marcos Ranjel.

[2] Undesignated statutory references are to the Penal Code.

[3] We will refer to the statute by its current designation, section 1172.1.

1

# I. BACKGROUND

## A. *Venegas's Conviction and Sentence*

An indictment filed in April 1999 charged Venegas with murder (§ 187; count 1) and unlawful possession of a firearm by a felon (former § 12021, subd. (a)(1); count 2). As to count 1, the indictment alleged Venegas personally used a firearm in the murder (§ 12022.5, subd. (a)) and alleged the special circumstance that the murder was intentional and was committed for financial gain (§ 190.2, subd. (a)(1)). On April 11, 2001, the jury found Venegas guilty of the charges and found the firearm and special-circumstance allegations to be true. On April 26, 2001, the trial court sentenced Venegas to LWOP for the count 1 murder charge, plus a four-year consecutive term for the personal firearm use enhancement. The court stayed a two-year term on the count 2 firearm possession charge pursuant to section 654. In August 2003, this court affirmed that judgment. (*People v. Ranjel* (Aug. 22, 2003, A094861) [nonpub. opn.].) Rather than recite the factual background on which Venegas's special-circumstance murder conviction was based, we will assume familiarity with it.

## B. *The Request for Resentencing*

On April 28, 2022, the People filed a section 1172.1 petition for recall and resentencing, asking the court to resentence Venegas to a "life with parole" sentence. Venegas filed briefs in support of resentencing. Following the recall of the San Francisco District Attorney and the assignment of a new deputy to the resentencing proceedings, on August 10, 2022, the People filed a motion to withdraw the pending section 1172.1 petition. In support of the withdrawal motion, the People argued in part that section 1385.1, which prohibits a trial court from striking a special-circumstance finding made by a jury, barred resentencing Venegas to a non-LWOP term, because

2

section 1385.1 could only be superseded by a statute enacted by two-thirds of both houses of the Legislature—a threshold that section 1172.1 did not meet.

The trial court held a hearing on the section 1172.1 petition on August 22, 2022. Given how long the petition had been pending, the court declined to allow the prosecutor to withdraw it. The court also concluded section 1385.1 did not bar it from granting relief. In anticipation of reaching the merits of the petition, the court allowed the prosecutor to submit statements from the victim's next of kin, all of whom opposed it.

At that point, the prosecutor returned to the issue of section 1385.1, arguing that both the initial prosecutor and Venegas had contemplated effecting the resentencing by striking the special circumstance, which section 1385.1 prohibited. The court responded that, if it were to grant relief, it would implement the resentencing by vacating Venegas's entire conviction and imposing in its place a judgment of first degree murder without the special circumstance, which the court believed would not violate section 1385.1's prohibition against striking the special circumstance. The court also noted the district attorney's office, prior to the recall election, had previously concurred with the view that section 1385.1 did not bar the resentencing proposed in the petition.

Turning to the merits of the petition, the court noted that, under section 1172.1, when a resentencing request is from a district attorney (or another specified official), there is a "presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18." (§ 1172.1, subd. (b)(2).) The court further recognized "post conviction factors" that it could consider: "disciplinary record, rehabilitation, time served, diminished physical capacity, whether or

3

not there's a reduced risk for future violence since the original sentencing, and whether or not continuing incarceration is no longer in the interest of justice." And the court stated that it was "supposed to consider whether or not the defendant was a victim of . . . child abuse, and neglect, sexual violence, and some other things . . . and whether or not the defendant was a youth at the time of the offense."

Having laid out these considerations, the court observed that Venegas's case "could easily have been a death penalty case in almost any other jurisdiction in California." The court surmised that "the death penalty was not sought" based on defense counsel's advocacy in invoking Venegas's troubled upbringing. The court also observed that Venegas had killed the victim "in a particularly cruel and vicious way for money" and that he "was 32 years old at the time of the offense" rather than "a youth."

The court acknowledged, however, that the murder itself "cannot be the only thing that drives the Court's decision," so it had examined "over 800 pages of [Venegas's] record in prison." The court noted that, beginning in 2015, a number of years after Venegas entered prison, he began taking self-help classes "and seems to be starting on the track." But Venegas's prison record included numerous negative factors as well. The record included "a two-on-one fight" in July 2006 where Venegas and a confederate "assaulted and battered another inmate"; "another two-on-one fight in the yard" in April 2010 where Venegas and "another inmate assault[ed] a third inmate"; Venegas's possession of drug paraphernalia in January 2011; his involvement in "drug sales" in April 2012; and "a positive drug test for methamphetamine" in 2012. The drug offenses were particularly concerning given that "drugs seem to have driven a lot of the behavior that [Venegas] experiences and

4

problems he has." Prison officials suspected in 2012 that Venegas was a member of the "Paisas," a "Security Threat Group."

Most recently, Venegas had been involved in a 2018 riot. While Venegas had represented that "he was just caught up and [a] victim of circumstance and just happened to be there," the court noted that "about 180 people who were there . . . just moved away and didn't become involved in the assaultive conduct." Moreover, "[o]thers on the yard had gotten down when they were told to and [Venegas] did not." And "shortly after the riot," Venegas "admitted that he was in fact a member" of the "Paisas," who had been classified as "a Security Threat Group" in the prison.

The trial court recognized that Venegas stated he wished to leave the Paisas and participated in rehabilitative programming, including educational classes and "self-help work, groups, things like that." The court also recognized Venegas's placement in the "low risk group" of the CDCR [California Department of Corrections and Rehabilitation] risk assessment, but the court explained that "[w]ithin three years of release, . . . persons in the low risk group" still posed substantial recidivism risks: "48 percent of them will be arrested and 18 percent of them will commit a violent felony." In the end, the court concluded that Venegas's "relatively recent[]" involvement with the Paisas, participation in a riot, and substance abuse overrode the presumption in favor of recall and resentencing. The court therefore denied the section 1172.1 petition.

Venegas filed a timely notice of appeal on September 8, 2022.

## II. DISCUSSION

### A. *The Statutory Framework*

"Prior to January 1, 2022, section 1170, former subdivision (d)(1) (former section 1170(d)(1)) 'authorize[d] the Secretary of the CDCR to recommend to the superior court that the court recall a previously imposed

5

sentence and resentence the defendant.  [Citation.]  The CDCR recommendation furnishe[d] the court with jurisdiction it would not otherwise have to recall and resentence and [was] "an invitation to the court to exercise its equitable jurisdiction." ' " (*People v. Braggs* (2022) 85 Cal.App.5th 809, 817, fn. omitted.)  " 'Assembly Bill No. 1540 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 719, §§ 1–7) (Assembly Bill 1540) came into effect on January 1, 2022, and moved the recall and resentencing provisions of former section 1170(d)(1) to new section 1170.03.' " (*Ibid.*)

"Effective June 30, 2022, '[t]he Legislature . . . renumbered section 1170.03 to section 1172.1, but made no substantive changes.' " (*People v. Braggs*, *supra*, 85 Cal.App.5th at p. 818.)  Section 1172.1 provides a trial court may recall and resentence a defendant at any time upon the recommendation of the Secretary of the CDCR or other specified public official, including the district attorney of the county in which the defendant was sentenced.  (§ 1172.1, subd. (a)(1).)  Section 1172.1 also provides that, if the "resentencing request is . . . from" a specified official, including the district attorney, then "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18."  (§ 1172.1, subd. (b)(2).)  "Subdivision (c) of section 1170.18 in turn defines an unreasonable risk of danger to public safety as 'an unreasonable risk that the [defendant] will commit a new violent felony within the meaning of [section 667, subdivision (e)(2)(C)(iv)].'  This 'subdivision of section 667 identifies eight types of particularly serious

6

or violent felonies, known colloquially as "super strikes" ' " (*Braggs*, at p. 818), one of which is murder.[4]

## B. *Analysis*

We need not address whether the district attorney had a proper basis to seek to withdraw the request to resentence Venegas (see *People v. Vaesau* (2023) 94 Cal.App.5th 132, 151), because the trial court did not permit withdrawal of the request. We also decline to address whether section 1385.1 prohibited the requested relief here. (See *People v. Garcia* (2022) 83 Cal.App.5th 240, 257, review granted Jan. 11, 2023, S276858.) Assuming the court was correct to reach the merits, we will simply decide whether it was within its discretion to deny resentencing relief. (*People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082 [abuse of discretion standard applies in reviewing a trial court's denial of recall under § 1172.1].) Finding no abuse of discretion, we will affirm.

---

[4] The eight types of violent felonies or "super strikes" are: "(I) A 'sexually violent offense' as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code. [¶] (II) Oral copulation with a child who is under 14 years of age and more than 10 years younger than the defendant as defined by Section 288a, sodomy with another person who is under 14 years of age and more than 10 years younger than the defendant as defined by Section 286, or sexual penetration with another person who is under 14 years of age and more than 10 years younger than the defendant, as defined by Section 289. [¶] (III) A lewd or lascivious act involving a child under 14 years of age, in violation of Section 288. [¶] (IV) Any homicide offense, including any attempted homicide offense, defined in Sections 187 to 191.5, inclusive. [¶] (V) Solicitation to commit murder as defined in Section 653f. [¶] (VI) Assault with a machinegun on a peace officer or firefighter, as defined in paragraph (3) of subdivision (d) of Section 245. [¶] (VII) Possession of a weapon of mass destruction, as defined in paragraph (1) of subdivision (a) of Section 11418. [¶] (VIII) Any serious or violent felony offense punishable in California by life imprisonment or death." (§ 667, subd. (e)(2)(C)(iv)(I–VIII).)

In determining whether Venegas posed an unreasonable risk of committing a designated violent felony, the trial court could properly consider the fact Venegas previously did commit such an offense—a special-circumstance murder. (See *People v. Strother* (2021) 72 Cal.App.5th 563, 566, 573 [upholding denial of resentencing under Propositions 36 and 47, in part because defendant's prior offenses were close to being super strikes].) And as noted, the court did not rely solely on Venegas's offense of conviction; it also carefully considered the record of his conduct in prison. (See *ibid.* [trial court did not abuse its discretion in concluding defendant's convictions, in combination with other factors such as his prison record, showed he posed an unreasonable risk of committing a super strike].)

The court noted that, while in prison, Venegas committed assaults in 2006 and 2011, continued to use drugs until at least 2012, was involved in a prison riot in 2018, and was affiliated with a gang at that time.[5] One area of particular concern to the court was Venegas's involvement with drugs, a problem that apparently had played a role in his decision to participate in the underlying murder-for-hire. The court reasonably considered Venegas's misconduct in prison in assessing the risk he would commit a future violent felony, while also acknowledging the positive steps he had taken in recent years, including seeking to dissociate himself from the gang and participating in educational and self-help programs. The court did not abuse its discretion in concluding, based on a balanced and thoughtful assessment of the record, that Venegas continued to present a risk of committing a violent felony and that resentencing was not appropriate here.

Venegas's arguments to the contrary are not persuasive. *In re Powell* (2010) 188 Cal.App.4th 1530, cited by Venegas, does not establish the court

---

[5] Venegas does not dispute that this conduct occurred.

here abused its discretion by considering Venegas's assaults and drug use in prison between 2006 and 2012. In *Powell*, during a 29-year period of incarceration, the defendant had "committed no violent or assaultive act" and had not abused drugs or alcohol. (*Powell*, at p. 1539.) Venegas, in contrast, had committed assaults (not including the riot incident, which does not appear to have been assaultive) and used drugs much closer in time to the court's hearing on the resentencing petition. It was not irrational for the court to consider this portion of Venegas's record.

As to his gang involvement, Venegas suggests some inmates may join gangs only to ensure their personal safety, rather than out of a desire to continue a criminal lifestyle. For this proposition, he cites *People v. Landry* (2016) 2 Cal.5th 52., which stands for nothing of the sort. In the course of its opinion, the *Landry* court simply describes—without endorsing—testimony from a defense expert about the reasons inmates may have for joining gangs. (*Id*. at p. 67.)

But more fundamentally, even granting the logic of the proposition, which is certainly plausible, Venegas does not point to any evidence suggesting he joined a gang only for self-protection. The trial court here was not obligated to place the most benign construction on Venegas's admitted gang membership, and the court properly could harbor concern about Venegas's gang involvement, which continued until 2018. The court appropriately credited Venegas for his efforts to leave the gang, while noting his involvement with the gang was still "relatively recent[]."

Finally, Venegas suggests his participation in a prison riot does not support a conclusion he poses an unreasonable risk of danger to public safety, because the prison records only show he failed to follow protocol and sit down when violence erupted, not that he personally committed violent acts. But

9

the court reasonably could consider (as one factor in its assessment of Venegas's record and risk of future dangerousness) the fact that, unlike many other prisoners, Venegas did not move away or get down when he had the opportunity to do so. The record, including Venegas's offense of conviction and his conduct in prison, supports the court's overall conclusion that, despite some progress, he posed an unreasonable risk of danger to public safety (i.e., there was an unreasonable risk he would commit a designated violent felony) and that resentencing therefore was not appropriate. (§§ 1172.1, subd. (b)(2), 1170.18, subd. (c).)

### III. DISPOSITION

The order denying the section 1172.1 petition for recall and resentencing is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
HIRAMOTO, J.*

---

* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.